IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRENT CLARK, MD,

      Plaintiff,                          21cv1123

                                           ELECTRONICALLY FILED

          v.

APPLIED CARDIAC SYSTEMS INC.,

      Defendant.

## MEMORANDUM ORDER DISMISSING/REMANDING CASE FOR LACK OF SUBJECT MATTER JURISDICTION

### I.    Introduction

This is a diversity of citizenship action grounded in state law and centered upon an alleged breach of contract, with subsequently added tort, fraud, and equitable claims. *Pro Se* Plaintiff, Brent Clark, M.D., a Pennsylvania resident, is a former doctor, and Defendant, Applied Cardiac Systems, Inc., a medical device company domiciled in California, with whom Plaintiff had previously contracted with for the purchase of a medical device, called an External Counter-Pulsation (ECP), for use in his now defunct medical practice. Plaintiff could no longer use the ECP, due to his incarceration on a criminal conviction before this Court on which he was serving jail time.[1]  The parties brokered a deal, the terms of which are in dispute, whereby Defendant would sell the ECP device on medical "consignment" in the secondary market, to a third party, and Defendant would pay Plaintiff a commission based upon this sale.  Defendant sold the device for $20,000.00, the net proceeds of the sale were $4,252.44, and Defendant mailed

---

[1] This Court (by Order at doc. no. 18) raised the issue of presiding over this civil case since it had previously sentenced Dr. Clark to a period of incarceration and supervised release at Criminal No.17-cr-00103. The Court set a date by which either party could move to recuse, and neither party moved for recusal.

Plaintiff a check for $1,000.00 to his former medical office, but unfortunately either was not received or not cashed by Plaintiff.

Boiled down to its essence, Plaintiff contends that he is owed 30 percent of the sale price of the device (roughly $6,000.00), while Defendant counters that the agreement between the parties entitled him to 20 percent of the commission fee (roughly $850.00 and Defendant sent him a check for slightly more, $1,000.00).   To wit, the nexus of this dispute centers upon a delta of approximately $5,000.00.

Because Plaintiff is *Pro Se*, and a sophisticated and intelligent party, and because this contractual dispute appears to be well-founded, in an abundance of caution, the Court permitted *Pro Se* Plaintiff to amend his Complaint three (3) times, since August 24, 2021, when his Original Complaint case was filed.  Plaintiff commenced this litigation with a breach of contract claim, and with each amendment, he added state law claims, namely, fraudulent misrepresentation, promissory estoppel, unjust enrichment,[2] and an alleged violation of the Pennsylvania Unfair Trade Practice and Consumer Protection Law (UTPCPL).  Plaintiff seeks numerous other damages, none of which would "legally" meet the jurisdictional threshold of $75,000.00, which is required in order for this Court to maintain and exercise diversity jurisdiction in this matter.

---

[2] The promissory estoppel and unjust enrichment claims are essentially alternative equitable claims that may be pled in state court in the event the breach of contract action is not viable, and will not be addressed in this Opinion.  Also, to the extent Plaintiff contends that he be put back in the position he would have been in prior to the entering into the contract (or quasi contract) (see for example doc. 3 at paragraph 51, where Plaintiff claims that he could have sold the device on his own for $90,000.00 over five years), that is not a proper measure of damages under a breach of contract or equitable action.  See *Vino 100, LC v. Smoke on the Water, LLC*, 864 F.Supp.2d 869 (E.D. Pa. 2012) (Under Pennsylvania law, the "preferred" remedy for breach of contract is expectation damages, that is, the money that will place the injured party in the position it would have enjoyed had the contract not been breached. Thus, the injured party "can recover nothing more than will compensate" it for the breach.)

Federal court are of limited jurisdiction and this Court is compelled to satisfy itself, *sua sponte*, even where the issue is not fully raised, whether jurisdiction is appropriate. Unfortunately, Plaintiff's state law claims (either individually or combined) do not pass jurisdictional muster, and thus, this Court lacks subject matter jurisdiction over this case. The Court will therefore grant Defendant's Motion to Dismiss pursuant to Rule 12(b)(1), will deny as moot/decline to rule upon Defendant's Motion to Dismiss pursuant to Rule 12(b)(6), and will remand this case to the state court, where Plaintiff may properly pursue his cause of action.

## II.    Procedural and Factual History

On August 24, 2021, Plaintiff filed a Complaint against Defendant, claiming Defendant breached a contract entered into by the parties. (Doc. 1).

On September 10, 2021, prior to Defendant responding to Plaintiff's Complaint, Plaintiff filed an Amended Complaint, asserting breach of contract, promissory estoppel, and fraudulent misrepresentation claims against Defendant. (Doc. 6).

On September 23, 2021, Defendant filed its answer to Plaintiff's Amended Complaint. (Doc. 10). On October 28, 2021, Defendant filed an Errata with respect to its Answer, to attach an exhibit referenced in the Answer, which had not been filed. (Doc. 16).

On November 5, 2021, Plaintiff filed a Motion to file a second amended complaint and attached his proposed amended complaint to his motion. (Doc. 21). Prior to the Court ruling on Plaintiff's Motion to amend, on November 29, 2021, Plaintiff, without seeking leave of Court, filed a second Amended Complaint. (Doc. 31). This amended complaint was a different amended complaint than the amended complaint attached to Plaintiff's Motion to amend (Doc. 21). On November 30, 2021, the Court ordered this second Amended Complaint, filed without the Court's permission, stricken from the record. (Doc. 32).

On December 1, 2021, Plaintiff filed a Motion to file a Third Amended Complaint and the Court granted his Motion.  (Doc. 34 and Doc. 35). On December 2, 2021, Plaintiff filed his Third Amended Complaint.  (Doc. 35).

On December 16, 2021, Defendant filed the pending Motion to Dismiss, and supporting brief, brought pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).  (Doc. 38, Doc. 39).  On January 3, 2022, Plaintiff filed his Response to Defendant's Motion to Dismiss. (Doc. 43).   Also, now pending is a Motion for Protective Order and to Extend Deadlines filed by Defendant filed on March 2, 2022 (Doc. 44) and Response thereto (Doc. 46).

*A.  Plaintiff's Fraud Claim*

Federal Rule of Civil Procedure 9 requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9. A fraud claim under Pennsylvania common law,[3] consists of the following six elements: "(1) [a] representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and, (6) the resulting injury was proximately caused by the reliance."  *7-Eleven, Inc. v. Upadhyaya*, 926 F. Supp. 2d 614, 626 (E.D. Pa. 2013) (quoting *Bortz v. Noon*, 729 A.2d 555 (Pa. 1999)).  Thus, "[t]he essence of fraud is a misrepresentation fraudulently uttered with the intent to induce the action undertaken in reliance upon it, to the damage of its victim." *Presbyterian Med. Ctr. v. Budd*, 832 A.2d 1066, 1072 (2003).

---

[3]   The parties do not dispute, and this Court so finds, that Plaintiff's state law claims against Defendant shall be determined pursuant to Pennsylvania law.

Plaintiff's fraud claim is premised upon certain terms contained in the parties' December 21, 2017 consignment agreement, as well as a number of statements made to Plaintiff by Louis Manera ("Manera"), in emails Manera sent to Plaintiff between February, 2018 and, 2020, which Plaintiff has attached to his Third Amended Complaint.  (Doc. 36, Doc. 36-1).  Manera is identified in these in emails, as Defendant's Vice President Marketing.  (Doc. 36, ¶¶ 35-51, Doc. 36-1 at 27).

The terms in the December 21, 2017 consignment agreement, which Plaintiff asserts were fraudulent misrepresentations made by Defendant to Plaintiff relative to Plaintiff's ECP Device are: (1) "ACS will provide Cardiovascular Specialists with payment within 30 days of collecting the funds from the sale of the unit;" and (2) "ACS will pay 30% of the total sale price depending on appraised value of systems upon return to ACS."  (Doc. 36 at ¶¶ 35, 37).

The statements made to Plaintiff by Defendant, which Plaintiff posits were fraudulent misrepresentations are: (1) Manera's statement in a February 12, 2018 email, in response to Plaintiff's February 8, 2018 email query, "any proceeds from the ECP machine yet/," "[n]othing yet . . . I will keep you posted though!;" (2) Manera's statement to Plaintiff on August 3, 2020, after Plaintiff stated to Manera in a June 16, 2020 email, "[i]f you have not sold my ECP machine, I want it back," that Plaintiff's CPT Device had been found, and that "the system has been (sic.) for parts . . . We can either rebuilt (sic.) it or get you money for the system as a parts nit.  There will not be much difference in price.  Maybe $1,000 - $2,000 more on a sale.  But by the time you ship back to you and pay for set up and installation, you will likely be upside down. I'll see what we can get you for parts;" and (3) unspecified statements made by Manera to Plaintiff in the emails Manera sent to Plaintiff that are attached to Plaintiff's Third Amended Complaint as Exhibits.  (*Id*. at ¶¶ 39-40, 45, 47, Doc. 36-1 at 10-11, 19, 21).

Plaintiff also alleges that he justifiably relied on Manera's misrepresentation that pursuant to the December 2017 consignment agreement, Plaintiff would be paid his 30% share of the total sale price of the ECP Device within 30 days of its sale.  (Id. at ¶ 43).

Plaintiff further alleges that when Manera made his "[n]othing yet . . . I will keep you posted though!" statement on February 12, 2018: (1) the ECP Device had already been sold, (2) Manera had received a $4,000.00 commission on the sale of the ECP Device; and (3) Manera's misrepresentation was made intentionally so that Plaintiff would not know about the sale of the ECP Device, and Defendant would not have to pay Plaintiff his 30% share of the ECP Device's sale price.  (Doc. 36 at ¶¶ 39-42).

Plaintiff further alleges that he suffered damages as a result of Manera's misrepresentations and utterance ["[n]othing yet . . . I will keep you posted though!"] in that Plaintiff lost his 30% share from the consignment sale of the ECP Device.  (Id. at ¶ 44).

Plaintiff also alleges that when Manera made his statement on August 3, 2020, he knew the utterance was false, and intended for Plaintiff to not insist, as demanded on June 6, 2020, on the return of his ECT Device.  (Id. at ¶ 49).

Plaintiff also alleges that he reasonably relied on Manera's fraudulent misrepresentations made between February 12, 2018 and August 3, 2020 by not retaking possession of his ECT device for leasing to other physicians who had overload patient capacity.  (Id. at ¶ 50).

### B.  Plaintiff's UTPCPL Claim

In order to bring a private action under the UTPCPL, the plaintiff must be:  "(a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a

result of the use or employment by any person of a method, act or practice declared unlawful by [73 P.S. § 201-3]." 73 P.S. § 201-9.2.   73 P.S. § 201-3(a) provides: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) of clause (4) of section 2 of this act [73 P.S. § 201-2] and regulations promulgated under section 3.1 of this act [73 P.S. § 201-3.1] are hereby declared unlawful." 73 P.S. § 201-3 (footnotes omitted).   73 P.S. § 201-2(4)(xxi) then states: "'Unfair methods of competition' and 'unfair or deceptive acts or practices' mean any one or more of the following: . . . (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2 (4)(xxi).

Count 3 of Plaintiff's Third Aamended Complaint alleges that Defendant violated the UTPCPL, when: (1) after Plaintiff's medical practice was dissolved, for personal purposes, he purchased the services of Defendant's consignment program to sell Plaintiff's ECP Device; (2) Defendant sold the ECP Device; (3) on August 3, 2020, Defendant falsely told Plaintiff that the ECP Device was being used as a parts donor machine, and was not being sold on consignment as agreed to by the parties in their December 20, 2017 agreement, when, in fact, the ECP Device had been sold, which caused Plaintiff to agree to a lesser payment from Defendant for the ECP Device as a parts machine donor; and (4) as a result of Defendant's conduct, Plaintiff agreed to accept a lesser amount of money, due to the ECP Device being sold as a part machine donor, than what he was entitled to, since the device had been sold on consignment.  (Doc. 36 at ¶¶ 53-56).

Plaintiff further alleges that Defendant violated the UTPCPL when Defendant: (1) stated that it owed Plaintiff 20%, and not 30%, for the consignment sale of the ECP Device; (2) tried to pay Plaintiff a lower percentage net sale price, as opposed to a higher percentage total sale price

7

for the consignment sale of the device, as agreed to by the parties in the December 21, 2107 agreement; (3) mailed a check to Plaintiff's place of business which had been closed for three years, when it had asked, and Plaintiff had provided, Defendant with a different address to mail payment, and never contacted Plaintiff to state that the check had been returned as non-deliverable, or not cashed; (4) from February 2, 2018, through August 3, 2020, fraudulently led Plaintiff to believe that the ECP Device had not been sold, or its whereabouts were unknown; (5) falsely stated to Plaintiff that he could expect payment related to the ECP Device's sale at the end of August, 2020, and did not attempt to pay Plaintiff until October, 2020; and (6) failed to return to Plaintiff signed copies of the June 21, 2017, and December 21, 2017 consignment agreements after Plaintiff had signed, and sent the agreements to Defendant.   (*Id*. at ¶¶ 58-67).

Plaintiff's Third Amended Complaint alleges that Plaintiff and Defendant entered into a consignment agreement on June 21, 2017, and then entered into a substitute consignment agreement on December 21, 2017, both contracts being entered into after Plaintiff's medical practice/business was dissolved on April 15, 2017.  (Doc. 36 at ¶¶ 2, 9-13).

### A.   *Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1).*

Defendant moves to dismiss this case pursuant to Rule 12(b)(1), on the basis that once Plaintiff's fraudulent misrepresentation, UTPCPL, and promissory estoppel claims are dismissed with prejudice, it is clear from the allegations set forth in Plaintiff's Third Amended Complaint that Plaintiff's claims against Defendant are for less than $75,000.000, and thus, this Court does not have subject matter jurisdiction over this case, subject matter jurisdiction in this case being based upon 28 U.S.C. § 1332, *i.e.,* diversity jurisdiction.

### III.   *Standards of Review*

### A.  *Pro Se Plaintiff*

Plaintiff is *pro se*.  As explained in *Imhoff v. Temas*, 67 F. Supp. 3d 700 (W.D. Pa. 2014):

> Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall,* 454 U.S. 364, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982); *United States ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir.1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. *See, e.g., Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996) (discussing Fed.R.Civ.P. 12(b)(6) standard). Because Plaintiff is a pro se litigant, this Court may consider facts and make inferences where it is appropriate.

*Imhoff*, 67 F. Supp. 3d at 704.

        *B.  Rule 12(b)(1)*

When a Court considers a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), it must first determine whether the defendant is making a facial or factual jurisdictional attack.

In a facial jurisdictional attack, where the defendant asserts that the allegations of the complaint are insufficient to establish jurisdiction, the Court must consider the allegations of the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Mortensen v. First Federal Savings and Loan Association*, 549 F.2d 884, 891 (3d Cir. 1977).

In a factual jurisdictional attack, where the defendant argues that the Court lacks jurisdiction based on evidence outside of the pleadings, the standard of review is very different. "Because at issue in a factual 12(b)(1) motion is the trial court's [actual] jurisdiction — its very power to hear the case — there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id*. at 891.  Thus,

when presented with a factual 12(b)(1) motion, the Court may consider evidence outside of the pleadings, *id.*, and need only accept the plaintiff's uncontroverted allegations as true. *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (citing *Gibbs v. Buck*, 307 U.S. 66, 72 (1939) and 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §§ 1350, 1363, at 219-20, 457 (2d ed. 1990)).

> The Court of Appeals for the Third Circuit explained:

> A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack. The former challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to "consider the allegations of the complaint as true." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n. 3 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). The latter, a factual challenge, attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or "otherwise present[ing] competing facts." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). In contrast to a facial challenge, a factual challenge allows "a court [to] weigh and consider evidence outside the pleadings." *Id.* (internal quotation marks omitted). When a factual challenge is made, "the plaintiff will have the burden of proof that jurisdiction does in fact exist," and the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. "[N]o presumptive truthfulness attaches to [the] plaintiff's allegations...." Id.

*Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).

This case presents a facial challenge to jurisdiction.

IV.    *Discussion*

A.  *The Amount in Controversy of legal claims falls short of the $75,000.00 threshold.*

28 U.S.C. Section 1332 provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States."

The Court begins with the axiom there is a Congressional intent to limit jurisdiction in diversity cases, and all doubts must be resolved in favor of remand.   *Samuel Motors v. Kia*

*Motors America*, 357 F.3d 392 (3d Cir. 2004); *Boyer v. Snap-On Tools Corp*., 913 F.2d 108, 111

(3d Cir. 1990).   The party asserting jurisdiction bears the burden of showing that at all stages of

the litigation the case is properly before the federal court.   *Packard v. Provident Nat. Bank,* 994

F.2D 1039, 1045 (3d Cir. 1993).

Eighty-four (84) years ago, in **St. Paul Mercury Indemnity Co. v. Red Cab Co.,** 303 U.S.

283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938), the Supreme Court set forth the standard

for determining whether the requisite amount in controversy has been properly alleged:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court
> is that . . . the sum claimed by the plaintiff controls if the claim is apparently made in
> good faith.   It must appear to a legal certainty that the claim is really for less that the
> jurisdictional amount to justify dismissal. . . . But if, from the face of the pleadings, it is
> apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if,
> from the proofs, the court is satisfied to a like certainty that the plaintiff never was
> entitled to recover that amount, and that his claim was therefore colorable for the purpose
> of conferring jurisdiction, the suit will be dismissed.

*Id.*

Since that time, the United States Court of Appeals for the Third Circuit has employed

numerous tests to determine the amount in controversy, which has culminated with a **clarification**

of the amount in controversy test in *Samuel-Bassett v. Kia Motors America, Inc.*, 357 F.3d 392

(3d Cir.2004) and its progeny (*Morgan v. Gay*, 471 F.3d 469 (3d Cir. 2006)).   The Court in

*Samuel-Bassett* noted a federal court's continuous obligation to satisfy itself of its jurisdiction,

*sua sponte,* if the parties have not flagged the issue, and reiterated that the removal statutes are to

be strictly construed against removal.   357 F.3d at 396.

When the relevant facts are not in dispute or findings have been made by the district

court, the *Samuel-Bassett* Court recommended that we "adhere to the legal certainty test" cited in

*Meritcare Inc. v. St. Paul Mercury Ins. Co*., 166 F.3d 214 (3d Cir. 1999) and established by the

United States Supreme Court in *St. Paul Mercury Indemnity Co. v. Red Cab Co*., 303 U.S. 283,

289 (1938).  In *Red Cab*, the plaintiff, in seeking a remand to state court, amended the complaint after removal to allege damages less than the federal jurisdictional amount.  The Court in *Red Cab* discussed the nature of a defendant's burden of proof in a removal case and stated that "the rule for determining whether the case involves the requisite amount as whether from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount."  *Samuel-Bassett*, 357 F.3d at 397. (*citing Red Cab*, 303 U.S. at 289.)  In these cases, where plaintiff does not specify the amount in controversy is less than the jurisdictional requirement, and it appears to legal certainty that plaintiff cannot recover over the jurisdictional requirement, remand is appropriate.  *Hodges v. Walgreens*, 2012 WL 1439080, at 3 (E.D. Pa. Apr. 26, 2012) (Schiller, J.) (citing *Frederico v. Home Depot*, 50 F.3d 188 (3d Cir. 2007).

Any factual disputes necessary to establish jurisdiction or the lack thereof must be resolved by the District Court if the complaint (or removal petition) are insufficient to establish the amount with certainty.  *Id*.   Furthermore, estimations of the amounts recoverable [under the state claims pleaded] must be realistic.  *Id*. at 403.  The inquiry should be objective and not based on fanciful, pie-in-the-sky, or simply wishful amounts, because otherwise the policy to limit diversity jurisdiction will be frustrated.  *Samuel-Bassett,* at 403.

 Recently, in *Sciarrino v. State Farm* and Casualty Co., 476 F.Supp.2d 91 (E.D. Pa. 2020), the United States District Court for the Eastern District of Pennsylvania analyzed the confusion surrounding the differing standards of review as follows:

> Having reviewed the case law, we believe *Morgan's* legal certainty standard remains the law of this Circuit and controls in this case.  Although the Supreme Court's opinion in *Dart Cherokee Basin* and the Third Circuit's opinion in *Judon* call into question the

legal certainty tests of *Red Cab* and *Morgan*, neither court explicitly overturned the *Red Cab/Samuel-Bassett* legal certainty standard or the *Morgan* legal certainty standard. *See United States v. Extreme Assocs., Inc.*, 431 F.3d 150, 155 (3d Cir. 2005) (reaffirming strict adherence to the principle that a lower court should leave to a higher court "the prerogative of overruling its own decisions") (quoting *Agostini v. Felton*, 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997)); *Guerra v. GMAC LLC*, Civ. A. No. 2:08-cv-01297-LDD, 2009 WL 449153, at *2 n.3 (E.D. Pa. Feb. 20, 2009) ("[W]e remain bound by controlling Third Circuit precedent in the absence of a square holding overruling that precedent."); *United States v. Walker*, Civ. A. No. 06-2265, 2007 WL 172335, at *3 (E.D. Pa. Jan. 22, 2007) ("[U]ntil the Supreme Court or the Third Circuit expressly overrules [a published Third Circuit opinion], we are still bound by it.").

Applying the framework described in those cases, we note that neither party has raised an issue of fact, so we do not apply the *McNutt/Samuel-Bassett* preponderance of the evidence test. (*See, e.g.*, Doc. No. 1 at p. 2 (asserting that "the amount in controversy in this matter exceeds $75,000 *based on the allegations contained in plaintiff's complaint*" (emphasis added)).) Instead, the parties contest the legal effect of the Sciarrinos' request for punitive damages and the complaint's *ad damnum* clauses, which state that the amount in controversy is below the jurisdictional minimum. In this context, we apply *Morgan*'s legal certainty standard, and State Farm must "prove by a legal certainty that the amount in controversy exceeds the statutory threshold." *Morgan*, 471 F.3d at 471. With this standard in mind, we turn to State Farm's argument that the amount in controversy requirement is met.

In calculating the amount in controversy, we must determine whether "the plaintiff's actual monetary demands in the aggregate exceed the [jurisdictional] threshold, irrespective of whether the plaintiff states that the demands do not."6 *Morgan*, 471 F.3d at 474–75. In making that determination, we aggregate the claims brought by one plaintiff against one defendant, *see Werwinski*, 286 F.3d at 666 ("[C]laims, whether related or unrelated, of a single plaintiff against a single defendant may be aggregated."), and we consider punitive damages and attorney's fees, as well as compensatory damages, *see Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993) ("When both actual and punitive damages are recoverable, punitive damages are properly considered in determining whether the jurisdictional amount has been satisfied."); *see also Dunfee*, 2008 WL 2579799, at *8 (considering both punitive damages and attorney's fees in determining whether the amount in controversy was met). However, in considering punitive damages, the court's estimations of the amount in controversy "must be realistic," and all "doubts must be construed in favor of remand." *Samuel-Bassett*, 357 F.3d at 403. "The inquiry should be objective and not based on fanciful, 'pie-in-the-sky,' or simply wishful amounts, because otherwise the policy to limit diversity jurisdiction will be frustrated." *Id.*

*Sciarrino*, 476 F.Supp.2d at 99.

The Court has the inherent power to grant a dismissal based on the legal insufficiency of a claim, and may exercise this power on its own initiative.  *See Meritcare Inc. v. St. Paul Mercury Ins. Co.*, 166 F.3d 214, 217 (3d Cir. 1999) ("A federal court has the obligation to address a question of subject matter jurisdiction *sua sponte*").  *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408-09 (3d Cir. 1991) (dismissal is proper only when the claim clearly appears to be either immaterial and solely for the purpose of obtaining jurisdiction, or is wholly insubstantial and frivolous), *quoting Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666-67 (1974) (some federal questions are so "insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court. . . ."); *Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980) (even if a party does not make a formal motion to dismiss, the court may, *sua sponte*, dismiss the complaint where the inadequacy of  the complaint is clear).

When, however, it appears to a legal certainty that the plaintiff was never entitled to recover the jurisdictional amount on the basis of the face of the Complaint(s), the case must be dismissed, even if the jurisdictional deficiency becomes evident only after trial. *E.g., id.,* 303 U.S. at 290, 58 S.Ct. at 591; *City of Boulder v. Snyder,* 396 F.2d 853, 856 (10th Cir.1968); *Lynn v. Smith,* 193 F.Supp. 887, 894 (W.D.Pa.1961).

Critically to the matter at hand, "key to the present matter is that the plaintiff's pleadings are not dispositive under the legal certainty test. This Court's task is to examine not just the dollar figure offered by the plaintiff but also her actual legal claims." *Morgan v. Gay*, 471 F.3d 479 (3d Cir. 2004).

While there is law that the amount in controversy must be judged on the face on the complaint, at least on a removal, there appears to be some conflict as to at what point the amount in controversy must be judged by the Court.  The Court recognizes its duty to satisfy itself that it has and maintains jurisdiction, and as the party imposing jurisdiction before this Court, it is Plaintiff's obligation to demonstrate that the amount in controversy meets the $75,000.00 threshold or that the Court finds to a legal certainty that Plaintiff may not recover the jurisdictional amount after also examining his "actual legal claims"  *Id.* at 475.

Again, even though "actual damages may not be established until later in the litigation, the inquiry is directed to the time when the complaint is filed . . . . When it appears to a legal certainty that plaintiff was never entitled to recover minimum amount set for section 1332, the case must be remanded even if the jurisdictional deficiency becomes evident only after trial." *Meritcare Inc. v. St. Paul Mercury Ins. Co.*, 166 F.3d 214, 217 (3d Cir. 1999).

Judging the well pleaded factual allegations of the Complaints as true, the Court finds to a legal certainty that Plaintiff has no viable path to recover the jurisdictional amount.  This Court finds to a "legal certainty" that a successful finding of liability on a $6,000.00 breach of contract claim for relief, even if the added fraudulent misrepresentation and UTPCPL claims were legally viable (which they are not for reasons explained below), would not entitle Plaintiff to an additional $69,000.00 in damages (punitive and treble), more than 10 times the amount of the underlying claim.  This Court finds that analysis of the Court in *Filipovic v. Government Employees Insurance Company*, 2020 WL 7479619 (E.D. Pa. December 18, 2020) to be persuasive.  In *Filipovic*, the Court remanded a case to state court, where the amount in controversy was $4,000.00 and fraud claims, including requests for punitive damages and a claim under the UTPCPL were alleged, finding that a multiplier of 10 still

15

would not bring the case within its jurisdiction.  Although this Court's analysis of lack of jurisdiction could end there, the legal viability of the claims on the face of the Complaints pursuant to Rule 12(b)(1) further evinces this result.

    *B.  The Fraudulent Misrepresentation Count is not a legally cognizable claim as it is barred by "gist of the action" doctrine.*

On the face of the Complaints, Plaintiff's fraudulent misrepresentation claim is based squarely in the performance of the contract.  As such, pursuant to Pennsylvania common law, it is barred by the "gist of the action" doctrine.

The foundational Pennsylvania Superior Court case on the subject *eToll, Inc. v. Elias/Savion Adver.*, Inc., 811 A.2d 10 (Pa. Super. 2002), held that "the gist of the action doctrine should apply to claims for fraud in the performance of a contract.

In *Vives v. Rodriguez*, 849 F.Supp.2d 507 (E.D. Pa. 2012),[4] the United States District Court for the Eastern District of Pennsylvania, studied the development and application of gist of the action doctrine and applied it to fraudulent misrepresentation claims, which bears repeating:

> We ultimately side with the authority from our Circuit, and predict that the Pennsylvania Supreme Court would find fraudulent inducement claims predicated upon misrepresentations as to a party's intent to perform under a contract to be barred by the gist of the action doctrine. To begin, language from *eToll*—which, since it was decided, has served as the Urtext in both federal and state court for essentially all cases applying the gist of the action doctrine under Pennsylvania law—explains that application of the doctrine should "turn on the question of whether the fraud concerned the performance of contractual duties," whereupon "the alleged fraud is generally held to be merely collateral to a contract claim for breach of those duties." *Id.* at 19. There can be little doubt that a misrepresentation as to a party's intent to perform contractual duties "concern[s] the performance of contractual duties."
> *eToll* further suggests that the gist of the action doctrine bars claims "arising solely from a contract between the parties" where "the liability stems from a contract" or "the tort

---

[4] This Court notes that *Bruno v. Erie Insurance Co.* 106 A.3d 48 (Pa. 2014) was decided by the Pennsylvania Supreme Court after the *Vives* case, but in *Wen v. Willis*, 117 F.Supp.3d 673 (E.D. Pa. Jul 31, 2015), the District Court cited *Vives* as persuasive authority as *Bruno* did not nullify the holdings in *Vives.*

claim essentially duplicates a breach of contract claim." *Id.* (internal quotation marks omitted). As the Pennsylvania Superior Court has explained, "[t]he elements of fraudulent misrepresentation are as follows: (1) A representation (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and, (6) the resulting injury was proximately caused by the reliance." *Ira G. Steffy & Son, Inc. v. Citizens Bank of Pa.,* 7 A.3d 278, 290 (Pa.Super.2010). We have already rehearsed the elements of a cause of action for breach of contract: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Omicron Systems,* 860 A.2d at 564 (brackets and quotation marks omitted). If a plaintiff can demonstrate that the defendant *knew,* at the time a contract was entered, that he did not intend to perform under that contract—thus satisfying the third element of a fraudulent misrepresentation claim—then success in proving the elements of a claim for breach would necessarily produce success in prosecuting a fraud claim.8 Similarly, an inability to prove a contract claim—whether because no agreement was concluded, no breach occurred, or no injury resulted—would doom any fraud claim based on misrepresentation of the intent to perform. Once a plaintiff proved that a defendant intended not to perform under a contract, any fraud claims would precisely duplicate any contract claims.9 Given this congruency between fraudulent inducement claims predicated on the intent to perform under a contract and claims for breach of that contract, *eToll* suggests that the former claims are barred by the gist of the action doctrine.

This conclusion is consonant with decisions from this Circuit explaining that misrepresentations as to duties later enshrined in a contract are barred by the doctrine. While it is true that these decisions conflict with recent Superior Court rulings holding that fraudulent inducement claims may be predicated upon a party's intent not to perform, those rulings appear to be based on a blanket exemption of all fraudulent inducement claims from the scope of the gist of the action doctrine. This categorical exception does not accord well with the measured tones of *eToll*—which, as the *Sullivan* court itself noted, merely "observed that the gist-of-the-action doctrine would not *necessarily* bar a fraud claim stemming from the fraudulent inducement to enter into a contract," 873 A.2d at 719 (emphasis added)—and was justified only in passing by the courts involved. Under these circumstances, we think it wiser to follow the guidance of *eToll* and the courts of our Circuit—a decision fortified by our Court of Appeals's recognition that "even if we were torn between two competing yet sensible interpretations of Pennsylvania law ... we should opt for the interpretation that restricts liability, rather than expands it, until the Supreme Court of Pennsylvania decides differently." *Werwinski v. Ford Motor Co.,* 286 F.3d 661, 680 (3d Cir.2002).

*Id*. at 521-522.

More recently, in *Downs v. Andrews*, 639 Fed. Appx. 816 (3d Cir. 2016), the United States Court of Appeals for the Third Circuit summarized the current state of the law on this issue:

> Plaintiffs cannot rescue their claim by attempting to cast their complaint as one alleging breach of a different duty, such as fraud in the inducement or misrepresentation regarding how their money would be used. Pennsylvania state and federal courts have reached different conclusions about whether the gist of the action doctrine applies to fraudulent inducement claims. *Compare Sullivan v. Chartwell Inv. Partners, LP,* 873 A.2d 710, 719 (Pa.Super.Ct.2005) (allowing claim for fraud in the inducement to proceed where defendant allegedly agreed to perform obligations it had no intention to perform to induce a change in the contract) *with Vives v. Rodriguez,* 849 F.Supp.2d 507, 518–20 (E.D.Pa.2012) (collecting cases and holding a fraudulent inducement claim barred by the gist of the action doctrine); *see Wen v. Willis,* 117 F.Supp.3d 673, 681 (E.D.Pa.2015) ("[W]here the precontractual statements that are the basis for the fraudulent inducement claim concern specific duties that the parties later outlined in the alleged contract," the claim may be dismissed under the gist of the action doctrine) (quoting *Integrated Waste Sol'ns, Inc. v. Goverdhanam,* No. 10–2155, 2010 WL 4910176, at *11 (E.D.Pa. Nov. 30, 2010)). However, we need not decide whether fraud in the inducement claims are categorically barred under the gist of the action doctrine because the pleadings demonstrate that this case is about a failure to perform under the contract. Plaintiffs' complaint demonstrates that the primary basis for alleging that fraudulent activity induced the contract is the fact that the notes were not all delivered in accordance with the contract, not a failure to fulfill a separate societal duty which may exist in other cases. Similarly, the allegation that Plaintiffs' funds were used for transactions unrelated to purchasing the notes simply underscores the conclusion that Plaintiff's claim that the Defendants failed to hold up their end of the bargain. *See* App. 45–46.
>
> Because the "nature of the duty" alleged to be violated arises out of Defendants' contractual promises to deliver the notes, and not a broader social duty, *see Bruno,* 106 A.3d at 68, we will affirm the District Court's dismissal of the complaint pursuant to the gist of the action doctrine.

After numerous iterations of the Complaint, Plaintiff does not claim that there was fraud in the inducement of the contract. Instead, the fraudulent misrepresentations are based in the performance of the contract.  Plaintiff alleges that Defendant did not give him the benefit of his bargain and attempts to add fraudulent misrepresentation allegations that allegedly ensued in the middle of the performance of the alleged contract.  Moreover, these allegations are certainly intertwined and fully based upon the failure to performance under the alleged contract and do not

18

relate to some broader social duty.  Accordingly, the gist of the action doctrine precludes the fraudulent misrepresentation claim pursuant to *eToll* and as further construed by *Vive,* and the Court is without subject matter jurisdiction to entertain this claim.

      C.  *Punitive Damages are not recoverable because the fraud claim is barred.*

      Plaintiff's claim of punitive damages on the fraudulent misrepresentation count also is not sufficient to establish subject matter jurisdiction, as the Court is reminded that estimations of the amounts recoverable must be realistic.

      The Third Amended Complaint includes a demand for punitive damages under the fraud count. When both actual and punitive damages are recoverable, punitive damages are properly considered in determining whether the jurisdictional amount has been satisfied. *Bell v. Preferred Life Assur. Soc'y,* 320 U.S. 238, 240, 64 S.Ct. 5, 6, 88 L.Ed. 15 (1943); *A.F.A. Tours, Inc. v. Whitchurch,* 937 F.2d 82, 87 (2d Cir.1991); *Klepper v. First Am. Bank,* 916 F.2d 337, 341 (6th Cir.1990).  When a claim for punitive damages is "patently frivolous and without foundation" because such damages are unavailable as a matter of law, that claim must be stricken from the amount in controversy. *Gray v. Occidental Life Ins. Co.,* 387 F.2d 935, 936 (3d Cir.1968). Also, when it appears that such a claim comprises the bulk of the amount in controversy and may have been colorably asserted solely or primarily for the purpose of conferring jurisdiction, that claim should be given particularly close scrutiny. *See Zahn v. International Paper Co.,* 469 F.2d 1033, 1033–34 n. 1 (2d Cir.1972), *aff'd,*  414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973).   However, "punitive damages are not recoverable in an action based solely on breach of contract." *Thorsen v. Iron & Glass Bank,* 328 Pa.Super. 135, 476 A.2d 928, 932 (Pa.Super.Ct.1984); *Johnson v.*

*Hyundai Motor Am.,* 698 A.2d 631, 639 (PaSuper.Ct.1997).  Having found that the fraud claim is barred by the gist of the action, the request for punitive damages is not colorable.

> *D.  Plaintiff has no standing under the UTPCPL, and in any event, this claim does not meet the jurisdictional threshold.*

Plaintiff's claim for violation of the consumer protection law, under the UTPCPL, is barred, and in any event, would not be sufficient to meet the jurisdictional threshold.

In *Balderston v. Medtronic Sofamor Danek, Inc*., 285 F.3d 238, 242 (3d Cir. 2002), the Court of Appeals discussed  Section 201–9.2(a) of the CPL and noted that it provides a private right of action and the potential recovery of treble damages for:

> Any person who *purchases* or leases goods or services primarily for *personal, family or household purposes* and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.  73 Pa. Cons.Stat. Ann. § 201–9.2 (West 1993) (emphasis added).

> The statute does not define "purchaser." Pennsylvania courts have declared the CPL is remedial, protecting consumers from deceptive practices or acts. *Commonwealth, by Creamer v. Monumental Props., Inc.,* 459 Pa. 450, 329 A.2d 812, 816 (1974). To recover, a plaintiff must suffer an ascertainable loss resulting from an "unfair or deceptive act" and have made a "purchase ... primarily for personal, family or household purposes." *Valley Forge Towers S. Condo. Ass'n v. Ron–Ike Foam Insulators, Inc.,* 393 Pa.Super. 339, 574 A.2d 641, 645 (1990).

> Acknowledging he did not purchase the pedicle screws himself, Dr. Balderston contends he acted as his patients' "purchasing agent." But the District Court held Dr. Balderston brought suit not as the "legal representative" of his patients, but on his own behalf for personal losses. *Balderston,* 152 F.Supp.2d at 778. Because his patients had "no interest in this litigation whatsoever," the District Court found Dr. Balderston had no private right of action. *Id.* at 779. Therefore, he had no standing under the CPL.

*Balderston v. Medtronic Sofamor Danek, Inc*., 285 F.3d 238, 242 (3d Cir. 2002)(emphasis added).

Just as the United States Court of Appeals for the Third Circuit in *Balderson* held that Dr. Balderston had no standing to sue, the same goes for Plaintiff in this case.   Plaintiff *purchased* the medical device for use in his medical practice, not in a personal capacity, and therefore, he cannot use the UPTCPL, to aid him in his recovery here. Though perhaps he (or his agent) *sold* the device for his own personal benefit, that is not commensurate with a claim under the UTPCPL because this law protects consumers, not sellers of commercial products, even if for personal financial gain. *See Gemini Physical Therapy and Rehab, Inc. v. State Farm Mut. Auto. Ins. Co.*, 40 F.3d 63, 65-66 (3d Cir. 1994) (affirming dismiss of physical therapy practice's claim that insurer violated UPTCPL because "it is not a purchaser or consumer of good or services under the CPL and therefore has no private right of action under the statute.")  *See also, DeFazio v. Gregory,* 836 A.2d 935, 940 (Pa. Super. Ct. 2003) (seller of timber could not advance UPTCPL claim because "Sections 201-7 and 201-9.2 clearly provide protection and a private right of action for a buyer, not a seller.")

Although Plaintiff now claims that he "purchased the services of [Defendant's] consignment program," looking at the unsigned agreement, which he references and attached to his Third Amended Complaint (and therefore the Court may view without converting this Motion into a Motion for Summary Judgment), it also contradicts his theory because he allegedly hired Defendant "as the selling agent in an effort to sell" the medical device.  Finally, even if he were somehow able to bootstrap a claim under the UTPCPL, the amount in controversy would still fall far short of the $75,000.00 jurisdictional threshold, because treble damages would entitle him to $18,000.00 on this claim (plus the $6,000.00 on the breach of contract claim) for a total of $24,000.00.

*V.      Conclusion*

On the face of the Complaints in this case, the Court rules *sua sponte,* to a legal certainty, Plaintiff is not and never was entitled to recover the jurisdictional threshold of $75,000.00, which is necessary for the Court to exercise subject matter jurisdiction.  The case is DISMISSED and TRANSFERRED pursuant to Defendant's 12(b)(1) Motion to Dismiss, and on the Court's inherent duty to satisfy itself that it maintains subject matter jurisdiction over disputes before it. The Court DENIES AS MOOT Defendant's Motion to Dismiss pursuant to Rule 12(b)(6), because it is without jurisdiction to address the Rule 12(b)(6) Motion.  (Doc. 38).  Finally, the Motion for Protective Order and to Extend Discovery is DENIED AS MOOT (Doc. 44).  This case is remanded/transferred to the Court of Common Pleas of Allegheny County FORTHWITH. The Clerk shall mark the docket closed.

So Ordered, this 16th day of March, 2022.

<u>s/ Arthur J. Schwab</u>
Arthur J. Schwab
United States District Judge